ORDERED.

**Dated:  January 24, 2023**

Caryl E. Delano
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                                    Case No. 8:15-bk-07039-CED
                                                          Chapter 11
Kraz, LLC,

          Debtor.
_____/

Kraz, LLC,                                                Adv. No. 8:15-ap-00655-CED

          Plaintiff,

v.

Branch Banking & Trust
Company,

          Defendant.
_____/

**FINDINGS OF FACT AND**
**CONCLUSIONS OF LAW ON REMAND**

In accordance with the District Court's order vacating this Court's Final Judgment and remanding the proceeding,[1] the Court enters the following findings of fact and conclusions of law on the issues that are the subject of the District Court's remand.

## I.    BACKGROUND

Kraz, LLC ("Kraz") is the debtor in this Chapter 11 case. Branch Banking & Trust ("BB&T") was the holder of a promissory note (the "Note") secured by a mortgage (the "Mortgage") on property owned by Kraz.

BB&T timely filed a $6.3 million proof of claim in Kraz's bankruptcy case (the "Claim"). The Claim consists of roughly $4.7 million in principal; $1 million in accrued interest; $225,000 in post-maturity default interest (through the petition date); $290,000 in real estate tax advances; and $9,000 for forced-place insurance.[2] After it filed the Claim, BB&T asserted that it was also entitled to $670,000 in attorney's fees it previously incurred in a state court foreclosure action (the "Foreclosure Action").[3]

Kraz filed an objection to BB&T's claim (the "Objection") and with it a counterclaim seeking a judgment for damages against BB&T for breach of contract,

---

[1] Adv. Doc. No. 282.

[2] Claim No. 3-1.

[3] Case No. 8:15-bk-07039-MGW, Doc. No. 129-21 at Schedule I.

fraud, constructive fraud, fraudulent misrepresentation, negligent misrepresentation, slander of title, tortious interference, and a willful violation of the automatic stay.[4]

Kraz and BB&T both filed motions for summary judgment. Bankruptcy Judge Michael G. Williamson determined (a) BB&T was not entitled to the $1 million in accrued interest nor to its $670,000 claimed attorney's fees, and (b) BB&T was entitled to judgment on Kraz's counterclaims for fraud, fraudulent misrepresentation, negligent misrepresentation, and willful violation of the automatic stay.[5]

After a multi-day trial, Judge Williamson entered Findings of Fact and Conclusions of Law on the remaining issues. After ruling in favor of BB&T on Kraz's remaining tort claims, Judge Williamson addressed Kraz's Objection to BB&T's Claim and Kraz's counterclaim for breach of contract (the "Breach of Contract Counterclaim").[6]

The Objection and the Breach of Contract Counterclaim were predicated on the same allegations:

- Before the Note matured, Kraz received a $5.2 million offer for its property;

- Although Kraz only owed $4.8 million on the Note, BB&T gave Kraz an estoppel letter in which BB&T asserted that $6.9 million was due on the Note; and

---

[4] Adv. Doc. No. 73.

[5] *In re Kraz*, 539 B.R. 887, 892 – 94 (Bankr. M.D. Fla. 2015).

[6] Adv. Doc. No. 249 at 16 – 38.

- As a result of BB&T's failure to provide an accurate estoppel letter, Kraz was unable to sell or refinance the property.

First, Judge Williamson ruled that because the allowance or disallowance of claims and counterclaims against persons filing claims against the estate are core proceedings,[7] the Bankruptcy Court has constitutional authority to enter a final judgment on the Objection and the Breach of Contract Counterclaim.[8] And because Kraz's objection to BB&T's claim for post-maturity default interest and its Breach of Contract Counterclaim were predicated on the same allegations, Judge Williamson concluded that his ruling on the Objection necessarily resolved the Breach of Contract Counterclaim.[9]

Second, Judge Williamson ruled that BB&T's claim for $290,000 in property tax advances was barred by the doctrine of res judicata because, despite BB&T's having sought recovery of the property tax advances in the Foreclosure Action, the state court did not award them to BB&T.[10]

Third, Judge Williamson ruled that BB&T was not entitled to post-maturity default interest.[11] Judge Williamson noted that Florida courts have held that a lender's refusal to accept a proper tender cuts off the lender's right to collect

---

[7] 28 U.S.C. § 157(b)(2)(B) and (C).

[8] Adv. Doc. No. 249 at 17 – 19.

[9] *Id.*

[10] *Id.* at 28 – 32.

[11] *Id.* at 19 – 27.

interest,[12] and he concluded that (a) Kraz could not sell or refinance the property securing the Mortgage—and thus pay off the Note—without an accurate estoppel letter; and (b) BB&T's failure to give Kraz an accurate estoppel letter prevented Kraz from tendering the balance due on the Note before it matured.[13]

Fourth, Judge Williamson determined that Kraz was entitled to recover damages on its Breach of Contract Counterclaim because: (a) Florida Statute § 701.04—which requires a mortgagee to provide a mortgagor with an estoppel letter upon request—was incorporated into the Mortgage; (b) BB&T breached the Mortgage when it failed to give Kraz an accurate estoppel letter; (c) if BB&T had given Kraz an accurate estoppel letter, Kraz could have sold its property, paid off BB&T, and avoided foreclosure; and (d) as a result of BB&T's failure to give Kraz an accurate estoppel letter, Kraz was unable to sell its property, was forced to file bankruptcy, and incurred $1.18 million in attorney's fees and costs.

Based on his summary judgment ruling and his Findings of Fact and Conclusions of Law, Judge Williamson entered a final judgment (the "Final Judgment") that (a) disallowed BB&T's claim to the extent it included roughly $1 million in accrued interest, $225,000 in post-maturity default interest, $288,000 in

---

[12] *Id.* at 19 (citing *Multach v. Adams*, 418 So. 2d 1254, 1255 (Fla. 4th DCA 1982)).

[13] *Id.* at 20 – 23.

5

property tax advances, and the $670,000 in attorney's fees it had later requested; and (b) awarded Kraz damages of $1.18 million on its Breach of Contract Counterclaim.[14]

BB&T appealed the Bankruptcy Court's Final Judgment to the District Court. The issues on appeal were Judge Williamson's rulings on (a) BB&T's entitlement to reimbursement for property tax advances and post-maturity default interest, and (b) the Breach of Contract Counterclaim. The District Court vacated the Final Judgment.[15]

First, the District Court reversed Judge Williamson's ruling on BB&T's claim for reimbursement of property tax advances. The District Court held that the doctrine of res judicata did not preclude the claim because "the state court judgment did not expressly address the property taxes that BB&T paid on behalf of Kraz."[16] Put another way, the District Court held there was no "clear-cut" adjudication on the merits of BB&T's claim for property tax advances in the Foreclosure Action.[17]

Second, the District Court reversed Judge Williamson's ruling that BB&T was not entitled to post-maturity default interest. The District Court held that the "failure

---

[14] Adv. Doc. No. 262.

[15] Adv. Doc. No. 282.

[16] *Id.* at 13.

[17] *Id.* at 12 – 13.

to provide an accurate estoppel letter does not excuse the promisor's contractual obligation to pay interest due under the note."[18]

Further, the District Court ruled that even if a lender's failure to provide an accurate estoppel letter could excuse a promisor's obligation to pay interest, Judge Williamson clearly erred in finding that BB&T's failure prevented Kraz from tendering the balloon payment before its maturity date for at least two reasons: (a) "there was no evidence that Kraz accepted an offer from iStorage or provided a counteroffer to its proposed terms" and Kraz's "lack of engagement in the negotiation process belie[d] its contention it was ready to sell to iStorage;"[19] and (b) Judge Williamson's "finding that the only way Kraz could tender the balloon payment would be to either sell or refinance the property ha[d] no evidentiary support."[20]

Finally, the District Court held that the Bankruptcy Court does not have constitutional authority to enter a final judgment on the Breach of Contract Counterclaim. Although the District Court recognized that the Bankruptcy Court has constitutional authority to enter a final judgment on a state law counterclaim when the counterclaim is necessarily resolved as part of the claims adjudication process, the District Court held that Kraz's Breach of Contract Counterclaim was not

---

[18] *Id.* at 7 – 8 (citing *Eckert Realty Corp. v. Eckert*, 941 So. 2d 426 (Fla. 4th DCA 2006)).

[19] *Id.* at 9.

[20] *Id.* at 10.

necessarily resolved by Judge Williamson's ruling on BB&T's Claim.[21] Accordingly, the District Court vacated the Final Judgment without deciding the merits of BB&T's appeal of Judge Williamson's ruling on the Breach of Contract Counterclaim.

After vacating the Final Judgment, the District Court remanded the case back to the Bankruptcy Court for proceedings consistent with its ruling. The District Court directed the Bankruptcy Court to resolve the property tax portion of BB&T's Claim;[22] however, the District Court did not give the Bankruptcy Court specific directions with respect to the Breach of Contract Counterclaim.

Thereafter, Judge Williamson passed away, and the case was reassigned to Chief Judge Caryl E. Delano. Chief Judge Delano certifies under Federal Rule of Civil Procedure 63 that she is familiar with the record in this proceeding and that she is able to determine this proceeding on remand without prejudice to the parties.

Having carefully considered the record, on remand, the Court concludes as follows:

First, BB&T is entitled to include its advances for property taxes in the Claim.

Second, because the District Court ruled that BB&T's inaccurate estoppel letters did not prevent Kraz from tendering the balance due on the Note before its maturity date, Kraz has failed to prove the damages element of its Breach of Contract Counterclaim. Based on the District Court's ruling that the Bankruptcy

---

[21] *Id.* at 17 – 18.

[22] *Id.*

Court does not have constitutional authority to enter a final judgment on the Breach of Contract Counterclaim,[23] the Court requests the District Court to adopt its findings of fact and conclusions of law on the Counterclaim.

## II.    FINDINGS OF FACT

In August 2009, BB&T acquired the Note secured by the Mortgage on a self-storage facility owned by Kraz (the "Property").[24] The Note provided for interest at the rate of 5.08% per annum and, if the balance due on the Note was not paid prior to its maturity date, for post-maturity default interest at the rate of 25% per annum.

A year after it acquired the Note and Mortgage, BB&T filed the Foreclosure Action.[25] After a trial, the state court found that Kraz had not defaulted under the Note and Mortgage; Kraz had a "long and unblemished record of timely monthly payments;" and BB&T "improvidently" accelerated Kraz's loan.[26]

On May 18, 2012, the state court entered a judgment in the Foreclosure Action that (a) reinstated the Note nunc pro tunc to June 30, 2009, (b) extended the maturity date of the Note for fourteen months from the judgment's effective date,

---

[23] *Id.* at 17.

[24] Kraz's Ex. 14, Adv. Doc. No. 160-14, ¶ 3(b); Kraz's Ex. 16, Adv. Doc. No. 160-16; Kraz's Ex. 109, Adv. Doc. No. 173-11; 6/13/16 Trial Tr., Adv. Doc. No. 223, p. 124, ll. 8 – 10; 6/20/16 Trial Tr., Adv. Doc. No. 225, p. 168, ll. 5 – 8.

[25] Kraz's Ex. 112, Adv. Doc. No. 173-14; 6/13/16 Trial Tr., Adv. Doc. No. 223, p. 121, l. 21 – p. 122, l. 8.

[26] Kraz's Ex. 5, Adv. Doc. No. 160-5, at 3.

and (c) determined BB&T was not entitled to accrued interest (the "State Court Judgment").[27]

By its terms, the State Court Judgment did not become effective until the parties agreed on a new payment schedule.[28] On three separate occasions, as part of its effort to establish the new payment schedule, BB&T confirmed to the state court that it understood it was not entitled to accrued interest.[29] In particular, in a December 30, 2013 motion, BB&T stated that the adjusted balance on the Note, not including any accrued interest after June 30, 2009, was $4,799,763.98.[30] Ultimately, the extended maturity date of the Note was determined to be April 28, 2015.[31]

## A.    Real Estate Taxes

BB&T's Claim No. 3-1 (the Claim) includes $288,091.74 in property taxes that it asserts it advanced on Kraz's behalf. BB&T attached to the Claim copies of receipts showing that BB&T paid $288,091.74 to the Hillsborough County Tax Collector (the "Tax Collector") for unpaid or delinquent 2008 and 2009 property taxes.[32]

---

[27] *Id.* at 4.

[28] *Id.* at 5.

[29] Kraz's Ex. 7, Adv. Doc. No. 160-7, ¶ 10; Kraz's Ex. 31, Adv. Doc. No. 160-31, p. 6, ll. 7 – 12; p. 14, l. 4 – p. 15, l. 14; Kraz's Ex. 8, Adv. Doc. No. 160-8, ¶ 2.

[30] Kraz's Ex. 8, Adv. Doc. No. 160-8, at ¶ 2.

[31] Kraz's Ex. 9, Adv. Doc. No. 160-9, ¶¶ 2 & 4.

[32] Claim No. 3-1 at part 9.

At trial, a BB&T employee, Gregory Biegel, testified that BB&T paid the property taxes for 2008 and 2009 to the Tax Collector by paying (1) a little over $90,000 by cashier's check in December 2009 as a partial payment on the 2008 taxes; (2) the remainder of the 2008 taxes in March 2010; and (3) in May 2010, the 2009 taxes.[33] These payments total $288,091.74—the amount BB&T asserts in the Claim.

In addition, at trial the Court admitted into evidence (1) three receipts showing a total of $90,869.75 was paid in person on December 22, 2009;[34] (2) a March 2010 check made payable to the Tax Collector in the amount of $77,625.66[35] and a printout from the Tax Collector's website showing payment was made in the same amount on March 26, 2010;[36] and (3) a check made payable to the Tax Collector in the amount of $119,596.33[37] with four receipts dated May 10, 2010, in the total amount of $119,596.33.[38] These payments total $288,091.74.

There were some discrepancies in BB&T's evidence: first, BB&T did not offer into evidence copies of the checks for the December 22, 2009 payments,[39] and

---

[33] 12/30/15 Trial Tr., Adv. Doc. No. 58, p. 190, l. 7 – p. 191, l. 12.

[34] BB&T's Ex. 71, Adv. Doc. No. 169-112.

[35] BB&T's Ex. 44, Adv. Doc. No. 169-85.

[36] BB&T's Ex. 71, Adv. Doc. No. 169-112.

[37] BB&T's Ex. 44, Adv. Doc. No. 169-85.

[38] BB&T's Ex. 71, Adv. Doc. No. 169-112.

[39] 12/30/15 Trial Tr., Adv. Doc. No. 58, p. 190, l. 14 – p. 191, l. 6; BB&T's Ex. 71, Adv. Doc. No. 169-112.

second, the evidence at trial was contradicted by the record in the Foreclosure

Action. For example, BB&T's state court foreclosure complaint—filed *after* BB&T

paid the property taxes for 2008 and 2009—alleged that, as of July 2010, Kraz only

owed $119,596.33.[40] And in a December 2013 motion filed in the Foreclosure

Action, BB&T stated that Kraz owed only $197,221.99 in unpaid taxes—$90,000 less

than BB&T currently claims—even though that amount included taxes for 2008,

2009, and 2010.[41]

## B.    Kraz's Counterclaim

On October 2, 2014, seven months before the Note's new maturity date, Kraz

received an offer from iStorage to buy the Property for $5,175,000[42]—nearly

$500,000 more than the $4.8 million BB&T had told the State Court was owed just

ten months earlier.[43] iStorage submitted two separate letters of intent, dated October

2, 2014, and December 31, 2014.[44] The December 31, 2014 letter of intent was

---

[40] Kraz's Ex. 112, Adv. Doc. No. 173-14, at ¶ 13.

[41] BB&T's Ex. 15, Adv. Doc. No. 169-56, ¶ 4. (Here, BB&T asserts a claim only for amounts it advanced for 2008 and 2009 taxes.)

[42] Kraz's Ex. 73, Adv. Doc. No. 160-73; 6/14/16 Trial Tr., Adv. Doc. No. 224, p. 20, ll. 10 – 16; p. 26, l. 23 – p. 27, l. 1.

[43] Kraz's Ex. 8, Adv. Doc. No. 160-8, ¶ 2.

[44] Kraz's Exs. 73 & 74, Adv. Doc. Nos. 160-73 & 160-74; 6/14/16 Trial Tr., Adv. Doc. No. 224, p. 20, ll. 10 – 16; p. 26, ll. 1 – 25.

accompanied by a letter from USAmeriBank confirming that iStorage's general

partner had $5 million in his USAmeriBank account.[45]

After Kraz received iStorage's October letter of intent, Kraz asked BB&T for

an estoppel letter.[46] Initially, BB&T refused to provide an estoppel letter unless Kraz

first provided it with a copy of a purchase agreement.[47] Finally, on December 31,

2014, BB&T provided Kraz with an estoppel letter that stated the balance due on the

Note was $6,938,227.27 (the "Estoppel Letter")—$2.1 million greater than BB&T

had stated was due on the Note just a year earlier.[48]

The Estoppel Letter itemized the following amounts due on the Note:

$5,146,773.61 in principal, $1,136,998.72 in accrued interest from June 2009 through

December 2014, and $654,454.94 in attorney's fees and costs BB&T had incurred in

its unsuccessful foreclosure action.[49] The main difference between the $4.8 million

BB&T told the state court it was owed in December 2013 and the $6.9 million

amount in BB&T's Estoppel Letter was $1.1 million in accrued interest and the

roughly $650,000 in attorney's fees.

---

[45] Kraz's Exs. 74 & 75, Adv. Doc. Nos. 160-74 & 160-75.

[46] 6/14/16 Trial Tr., Adv. Doc. No. 224, p. 22, ll. 6 – 21.

[47] 6/13/16 Trial Tr., Adv. Doc. No. 223, p. 34, l. 15 – p. 35, l. 8; 6/14/16 Trial Tr., Adv. Doc. No. 224, p. 22, ll. 6 – 23; p. 25, ll. 2 – 19; p. 58, ll. 1 – 20; p. 59, ll. 6 – 12; Kraz's Ex. 119, Adv. Doc. No. 173-21.

[48] Kraz's Ex. 36, Adv. Doc. No. 160-36, p. 2.

[49] *Id.*

Kraz contended that it could not counter iStorage's offer without an accurate estoppel letter from BB&T,[50] and was therefore unable to close on a sale to iStorage before the Note's maturity date[51] or to refinance the Note.[52]

Ultimately, Kraz did not pay the balance due on the Note before its April 28, 2015 maturity date. BB&T filed a second foreclosure action against Kraz, this time in federal district court,[53] and Kraz filed this Chapter 11 bankruptcy case.

Kraz incurred $1.18 million in fees and costs in the prosecution of its bankruptcy case, the Objection, and its counterclaims.[54]

## III.    CONCLUSIONS OF LAW

Under 28 U.S.C. § 1334, the District Court has original and exclusive jurisdiction over all cases under title 11 and original but nonexclusive jurisdiction over all civil proceedings arising under title 11, or arising in or related to cases under title 11.[55] By Order of Reference, the District Court has referred all cases under title

---

[50] 6/14/16 Trial Tr., Adv. Doc. No. 224, p. 19, ll. 5 – 12; p. 25, ll. 2 – 25; p. 32, ll. 3 – 15.

[51] *Id.* at p. 25, ll. 2 – 25.

[52] 6/13/16 Trial Tr., Adv. Doc. No. 223, p. 189, ll. 7 – 16; 6/14/16 Trial Tr., Adv. Doc. No. 224, p. 12, l. 19 – p. 13, l. 12; p. 14, l. 4 – p. 15, l. 15; p. 17, l. 5 – p. 19, l. 25; p. 34, l. 22 – p. 38, l. 17.

[53] *Branch Banking & Trust Co. v. Kraz, LLC*, Case No. 8:15-cv-01042-EAK-AEP, Middle District of Florida, Tampa Division.

[54] 6/13/16 Trial Tr., Adv. Doc. No. 223, p. 142, l. 6 – p. 153, l. 18.

[55] 28 U.S.C. § 1334(a), (b); *Stern v. Marshall*, 564 U.S. 462, 473 (2011).

11 and any or all proceedings arising under title 11, or arising in or related to cases under title 11 to the Bankruptcy Court.[56]

The filing of a proof of claim, and asserting an objection to a proof of claim, "arises in" a case under title 11.[57] And Kraz's Breach of Contract Counterclaim is "related to" a case under title 11 because the outcome of the Breach of Contract Counterclaim could have a conceivable effect on the bankruptcy estate (i.e., it would reduce the amount of BB&T's claim and therefore its distribution under the confirmed plan).[58] So the Bankruptcy Court has subject-matter jurisdiction over the Objection and the Breach of Contract Counterclaim.

But that does not necessarily mean the Bankruptcy Court has the authority to finally adjudicate those claims. Under 28 U.S.C. § 157, a bankruptcy court has the statutory authority to enter final judgments in all "core" proceedings.[59] By statute, "core" proceedings include proofs of claim and counterclaims to proofs of claim.[60]

---

[56] *Feb. 22, 2012 Amended Order of Reference*, *In re Standing Order of Reference Cases Arising Under Title 11, United States Code*, 6:12-mc-26-ORL-22.

[57] *Good Gateway, LLC v. NRCT, LLC (In re Bay Circle Props., LLC)*, 646 B.R. 348, 363 (Bankr. N.D. Ga. 2022) ("The second category, 'arising in a case under title 11,' involves administrative-type matters or matters that could arise only in bankruptcy, such as filing a proof of claim or an objection to the discharge of a particular debt.").

[58] *Estate of Juanita Jackson v. Schron (In re Fundamental Long Term Care, Inc.)*, 873 F.3d 1325, 1336 (11th Cir. 2017) ("The Third Circuit has held that a civil proceeding is '"related to" a [bankruptcy] proceeding if the outcome of [the] proceeding could conceivably have any effect on the estate being administered in bankruptcy.' We have indicated our agreement with that principle.") (citations omitted).

[59] 28 U.S.C. § 157(b)(1); *Stern*, 564 U.S. at 474 ("Bankruptcy judges may hear and enter final judgments in 'all core proceedings arising under title 11, or arising in a case under title 11'").

[60] 28 U.S.C. § 157(b)(1), (b)(2)(B), (b)(2)(C).

But, in addition to statutory authority, the Bankruptcy Court must also have constitutional authority to finally adjudicate a "core" proceeding.

In *Stern v. Marshall*, the Supreme Court held that while a bankruptcy court may finally adjudicate a proof of claim, it does not have constitutional authority to enter final judgment on a state law counterclaim that is not necessarily resolved as part of the claims-allowance process.[61] Here, the District Court held on appeal that Kraz's Breach of Contract Counterclaim was not necessarily resolved as part of the claims-allowance process.

Thus, as directed by the District Court, this Court has authority to enter a final judgment on the Objection, but it does not have authority to enter a final judgment on the Breach of Contract Counterclaim. When a bankruptcy court has subject-matter jurisdiction to hear a proceeding but not the constitutional authority to finally adjudicate it, the bankruptcy court may enter proposed findings of fact and conclusions of law (or the district court may treat the bankruptcy court's findings of fact and conclusions of law as *proposed* findings of fact and conclusions of law).[62]

---

[61] 564 U.S. at 499.

[62] 28 U.S.C. § 157(c); *Executive Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 35 – 36 (2014) ("The lower courts, including the Ninth Circuit in this case, have described *Stern* claims [a claim designated for final adjudication in the bankruptcy court as a statutory matter, but prohibited from proceeding in that way as a constitutional matter] as creating a statutory "gap." By definition, a *Stern* claim may not be adjudicated to final judgment by the bankruptcy court, as in a typical core proceeding. But the alternative procedure, whereby the bankruptcy court submits proposed findings of fact and conclusions of law, applies only to non-core claims. Because § 157(b) does not explicitly authorize bankruptcy judges to submit proposed findings of fact and conclusions of law in a core proceeding, the argument goes, *Stern* created a "gap" in the bankruptcy statute. That gap purportedly renders the bankruptcy court powerless to act on *Stern* claims, thus requiring the district court to hear all *Stern* claims in the first instance. We disagree. The statute permits *Stern* claims to proceed as non-core

16

### A.    Real Estate Taxes

"When a proof of claim contains all the information required under Rule 3001, it 'constitutes prima facie evidence of the validity and amount of the claim.'"[63] At that point, the party objecting to the claim must come forward with enough evidence to overcome the claimant's prima facie case.[64] If the objecting party does so, then whichever party would bear the burden of proof outside bankruptcy bears the burden of proof inside bankruptcy.[65] Here, assuming BB&T bears the burden of proof as to its claim for the property tax advances—which it may not—it has met that burden.

The Court finds that any discrepancies between the evidence admitted at trial and the record in the Foreclosure Action are insufficient to overcome Mr. Biegel's unrebutted testimony and the documentary evidence that BB&T advanced $288,091.74 for the 2008 and 2009 property taxes.

---

within the meaning of § 157(c).") (citation omitted). The District Court could have treated this Court's Findings of Fact and Conclusions of Law as Proposed Findings of Fact and Conclusions of Law without the need for remand. *In re Standing Order of Reference Cases Arising Under Title 11, United States Code*, 6:12-mc-26-ORL-22 (Feb. 22, 2012) ("The district court may treat any order of the bankruptcy court as proposed findings of fact and conclusions of law in the event the district court concludes that the bankruptcy judge could not have entered a final order or judgment consistent with Article III of the United States Constitution.").

[63] *Walston v. PYOD, LLC (In re Walston)*, 606 F. App'x 543, 546 (11th Cir. 2015) (quoting Fed. R. Bankr. P. 300(f)).

[64] *Id.* (citing *Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692, 701 (5th Cir. 1977)).

[65] *Id.* (citing *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20 (2000)).

Accordingly, the Court concludes that BB&T has proven, by a preponderance of the evidence, that it advanced $288,091.74 in property taxes on Kraz's behalf.

### B.    Kraz's Counterclaim

To prevail on its Breach of Contract Counterclaim, Kraz must prove a valid contract, a material breach of that contract, and damages.[66]

The evidence at trial was undisputed that BB&T breached its statutory and contractual obligation to provide an accurate estoppel letter. Rather than defend the breach of contract claim, BB&T asserts Kraz has not proved any damages as a consequence of its breach.

Kraz bears the burden of proving that BB&T's breach was the cause of Kraz's damages—in this case, the attorney's fees and costs Kraz incurred in the bankruptcy case it filed as a result of BB&T's breach and the filing of a second foreclosure action.[67]

But the District Court found there was no evidence at trial to support Kraz's contention that BB&T's failure to provide an accurate estoppel letter prevented Kraz from tendering payment of the Note before its maturity date. Because this Court is bound by the District Court's ruling, the Court concludes that BB&T's breach of its

---

[66] *Beck v. Lazard Freres & Co.*, 175 F.3d 913, 914 (11th Cir. 1999).

[67] *Prestige Dev. Grp., Inc. v. Russell*, 612 So. 2d 691, 692 (Fla. 1st DCA 1993) ("The burden is on the plaintiff in a contract dispute to prove that his damages were caused by a breach of the contract."); *Carpenter Contractors of Am., Inc. v. Fastener Corp. of Am., Inc.*, 611 So. 2d 564, 565 (Fla. 4th DCA 1992) ("Under a breach of contract cause of action the burden of proof is on the plaintiff to prove by a preponderance of the evidence the existence of a contract, a breach, and damages flowing from the breach.").

obligation to provide an accurate estoppel letter was not the cause of Kraz's filing

bankruptcy and its incurrence of $1.18 million in fees and costs.

Accordingly, the Court concludes that BB&T is entitled to judgment on Kraz's

Breach of Contract Counterclaim.

## IV.    CONCLUSION

For the reasons discussed above, the Court:

    A.    Finds that BB&T is entitled to reimbursement for property tax advances and post-maturity default interest. The Court directs the parties to meet and confer regarding the form of a proposed amended final judgment that allows Claim 3-1 in the principal amount of $4,590,573, reimbursement for property tax advances in the amount of $288,091.74, and post-maturity default interest.

    B.    Recommends that the District Court adopt its findings of fact and conclusions of law and enter a final judgment in favor of BB&T on Kraz's Breach of Contract Counterclaim.

---

Clerk's Office to serve interested parties via CM/ECF.

---